UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN RAMSEY,

Petitioner,

Case Number 5:10-CV-14752
Honorable John Corbett O'Meara

v.

GREG McQUGGIN,

Respondent.
_________________________________/

**OPINION AND ORDER (1) GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING HABEAS PETITION [DKT. 21], AND (2) DENYING PETITIONER CERTIFICATE OF APPEALABILITY AND PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS**

Petitioner Sean Ramsey, confined at the Handlon Correctional Facility in Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his pro se application, Petitioner challenges his Wayne Circuit Court conviction and sentence for first-degree murder (Mich. Comp. Laws § 750.316(1)(a)), assault with intent to murder (§ 750.83), felon in possession of a firearm (§ 750.224f), and possession of a firearm during the commission of a felony (felony firearm) (§ 750.227b). Respondent has filed a motion for summary judgment (Dkt. 21), arguing that the petition was not timely filed. For the reasons stated below, the Court will grant Respondent's motion for summary judgment and dismiss the petition.

**Background**

The Michigan Court of Appeals summarized the facts surrounding Petitioner's conviction:

> This case arises from the shooting death of James Cross. On July 6, 2001, Cross was driving through Highland Park when he saw his friend, Marcellis Harris, driving a car that belonged to the passenger, Kyree. Harris and Cross parked their vehicles near the curb, got out, and were standing in the street talking when a white Grand Prix pulled up next to them. Harris identified James Ramsey, defendant's

> brother, as the driver of the Grand Prix and defendant as the occupant of the front passenger seat. Harris also noticed a third unidentified man in the back seat.
>
> Harris saw that defendant was pointing a gun at them, and he and Kyree hid behind their vehicle. Defendant fired gunshots from a revolver, and James Ramsey fired gunshots from what appeared to be a nine millimeter handgun, extending his arm across the front seat past defendant. A total of three to five gunshots were fired, but nobody was hit. The Grand prix performed a U-turn and returned. James Ramsey fired his weapon from the driver's window, and defendant fired gunshots across the hood of the vehicle while leaning out of the passenger window. Approximately ten to fifteen gunshots were fired, and the Grand Prix drove away. Cross sustained gunshot wounds to his left arm and abdomen, and died two days later as a result of the gunshot wounds. Neither Kyree nor Harris was injured.
>
> Harris made a statement to the police after the shooting, but he admitted at trial that he had given false information because he intended to seek revenge on defendant and James Ramsey without police involvement. He testified that he made a second police statement on August 10, 2001, and he identified defendant and James Ramsey as the shooters and explained his history with them. Harris had known defendant since 1989 and James Ramsey for five years prior to the shooting. Approximately one or one-and-a-half years before the shooting Harris had a verbal argument with James Ramsey. Two or three months after the argument, Harris and James Ramsey got into a fistfight in which Harris prevailed. After the fistfight, Harris did not see James Ramsey or defendant again until the shooting.

*People v. Ramsey*, No. 245094, 2004 WL 1103976, *1-3 (Mich. Ct. App. May 18, 2004).

Following his conviction and sentence, Petitioner filed an appeal of right with the Michigan Court of Appeals. On May 14, 2004, the Michigan Court of Appeals issued an unpublished opinion affirming Petitioner's convictions. *Id*. Petitioner then filed an application for leave to appeal in the Michigan Supreme Court. On November 22, 2004, the Michigan Supreme Court denied Petitioner's application by form order. *People v. Ramsey*, 688 N.W.2d 830 (Mich. 2004) (table).

On September 14, 2005, Petitioner filed a motion for relief from judgment in the state trial court. The trial court issued an opinion and order denying this motion on October 2, 2006.

On September 24, 2007, Ramsey then filed a delayed application for leave to appeal in the Michigan Court of Appeals. On February 5, 2008, the Michigan Court of Appeals denied

Petitioner's application in a standard order. *People v. Ramsey*, No. 280868 (Mich. Ct. App. Feb. 5, 2008). Petitioner did not appeal this decision to the Michigan Supreme Court.

On November 22, 2010, Petitioner signed and dated his federal habeas petition, and it was filed with the Court on November 22, 2010.

Petitioner thereafter filed a motion to stay this case so that he could return to the state courts to exhaust additional claims. On February 23, 2011, this Court entered an order granting Petitioner's request to stay proceedings and administratively close the habeas case. [Dkt. 8].

On March 17, 2011, Petitioner then filed a second motion for relief from judgment in the state trial court. The motion included claims based on allegedly newly discovered evidence. Petitioner asserted that he obtained an affidavit from Gerell McKay in 2005, wherein McKay claims that prosecution witness Harris told McKay that he and Kyree committed the crime and set-up Petitioner. Petitioner also claims that he obtained a letter from the Oak Park Police Department in 2008 stating that prosecution witness Viviano was not an officer with their department. The trial court denied the motion on June 15, 2011. On November 16, 2011, the trial court denied Petitioner's request for reconsideration.

On February 28, 2012, Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals. On August 24, 2012, the Michigan Court of Appeals dismissed Petitioner's application pursuant to Michigan Court Rule 6.508(D). *People v. Ramsey*, No. 308813 (Mich. Ct. App. Aug. 24, 2012). Petitioner applied for leave to appeal to the Michigan Supreme Court, but on December 26, 2012, the Michigan Supreme Court denied the application. *People v. Ramsey*, 823 N.W.2d 579 (Mich. 2012) (table). On January 7, 2013, the Michigan Supreme Court denied Petitioner's motion for reconsideration.

Petitioner then filed a motion to reopen his habeas case and file an amended petition on May

30, 2013. The case was subsequently reopened.

**Discussion**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a one-year statute of limitations applies to an application for writ of habeas corpus by a person in custody pursuant to a judgment of a state court. The one-year limitations period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Absent equitable tolling, a petition for writ of habeas corpus must be dismissed where it has not been filed before the limitations period expires. See 28 U.S.C. § 2244(d)(1); *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).

Here, there are two potential starting dates for the limitations period. Under subsection (A) the period began to run when Petitioner's conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). "Direct review," for purposes of subsection 2244(d)(1)(A), concludes when the availability of direct appeal to the state courts and to the United States Supreme Court has been exhausted. *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009). The Michigan Supreme Court denied leave to appeal from Petitioner’s direct appeal on November 22, 2004. Petitioner did not seek a writ of certiorari in the

United States Supreme Court. His convictions therefore became final 90 days later, on February 20, 2005, when the availability of a direct appeal to the United States Supreme Court expired due to the expiration of the deadline for seeking a writ of certiorari. The limitations period began to run the next day, February 21, 2005. See Sup. Ct. R. 13.1; Sup. Ct. R. 30.1.

The second potential starting point is under subsection (D), the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. Petitioner alleges two items of newly discovered evidence in support of his claims. First, he asserts that Gerell McKay's affidavit, dated December 14, 2005, constitutes evidence that he is innocent and was set-up by Kyree and Harris. Petitioner also asserts that he received a letter from the Oak Park Police Department dated January 18, 2008, indicating that prosecution witness Viviano was not a police officer with that department.

Setting aside the dubious value of these items, the Court will assume for the purposes of this motion that the period of limitations started running from the latest of these possible starting points--January 18, 2008.

The limitations period is tolled under 28 U.S.C. § 2244(d)(2) for the period of time in which there is a petition for state post-conviction review pending in the state courts. Here, Petitioner's motion for relief from judgment, and the state appeal that followed it, was pending from September 14, 2005, when it was filed, until February 5, 2008, when the Michigan Court of Appeals denied relief. Because, Petitioner's application for state post-conviction review was still pending at the time Petitioner discovered his new evidence, the period did not start to run until after the state appellate court denied relief. See *Evans v. Chavis*, 546 U.S. 189, 191 (2006) (citing *Carey v. Saffold*, 536 U.S. 214 (2002))

The limitations period therefore started running on February 6, 2008, and continued to do

so until Petitioner signed, dated, and mailed his federal habeas petition on November 22, 2010. This period exceeded the one-year limit. The petition was therefore untimely filed unless Petitioner can demonstrate grounds for equitable tolling.

A habeas petitioner is entitled to equitable tolling for the period of time "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, ___ U.S. ___; 130 S. Ct. 2549, 2562; 177 L.Ed.2d 130 (2010) (*quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Equitable tolling is used "sparingly" by the federal courts. *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010). The party seeking equitable tolling bears the burden of proving that he is entitled to it. *Id*. "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000) (citation omitted).

Petitioner argues that his delays were caused by the usual hardships encountered by incarcerated litigants proceeding pro se. He also asserts that he was unaware of he deadline. None of these allegations warrant equitable tolling. Typically, equitable tolling applied only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000)). Petitioner makes no such showing. The fact that he is untrained in the law, may have been proceeding without a lawyer, or may have been unaware of the statute of limitations does not warrant tolling. See *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) (ignorance of the law does not justify tolling); *Rodriguez v. Elo*, 195 F. Supp. 2d 934, 936 (E.D. Mich. 2002) (the law is "replete with instances which firmly establish that ignorance of the law, despite a litigant's pro se status, is no excuse for failure to follow established legal requirements); *Holloway v. Jones*, 166 F.

Supp. 2d 1185, 1189 (E.D. Mich. 2001) (lack of professional legal assistance does not justify tolling); *Sperling v. White*, 30 F. Supp. 2d 1246, 1254 (C.D. Cal. 1998) (citing cases stating that ignorance of the law, illiteracy, and lack of legal assistance do not justify tolling). Petitioner is not entitled to equitable tolling under *Holland*.

Finally, in *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931-32, 185 L. Ed. 2d 1019 (2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-of-justice exception. In order to make a showing of actual innocence under *Schlup*, a petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *McQuiggin*, 133 S. Ct. at 1935 (quoting *Schlup*, 513 U.S. at 329) (addressing actual innocence as an exception to procedural default)). Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling, a petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence. *Id*. at 1936.

Here, Petitioner's claim of actual innocence is based on McKay's affidavit. McKay was apparently incarcerated with Petitioner. The Michigan Department of Corrections website indicates that he is now a parole absconder. Such an affidavit does not come close to meeting the exacting standards set forth in *Schlup.* See *Milton v. Secretary, Dep't of Corr.*, 347 F. App'x 528, 531-32 (11th Cir. 2009) (affidavits from fellow inmates and family members created after trial are not sufficiently reliable evidence to support a claim of actual innocence); *Mendez v. Graham*, No. 11-CV-5492, 2012 U.S. Dist. LEXIS 179523, 2012 WL 6594456, *11-12 (E.D.N.Y. Dec. 18, 2012) (finding that fellow inmate's affidavit, executed after meeting habeas petitioner in prison, and

containing confession to petitioner's crime, was unreliable); *Torres v. Graham*, No. 06-CV-508, 2009 WL 4730313, *4 n. 8 (W.D.N.Y. Dec. 5, 2009) (finding that affidavits from fellow inmates who were supposedly present at the shooting and alleged that petitioner was not the shooter were unreliable); see also *Herrera*, 506 U.S. at 423 ("It seems that, when a prisoner's life is at stake, he often can find someone new to vouch for him"). Petitioner therefore has not demonstrated his actual innocence to excuse his failure to comply with the statute of limitations.

Accordingly, the petition was filed after the expiration of the statute of limitations, and Respondent's motion for summary judgment will therefore be granted.

## III. Conclusion

Before petitioner may appeal, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id*. Having undertaken the requisite review, the court concludes that jurists of reason could not find the court's procedural ruling that the petition is untimely debatable. The Court will also deny petitioner permission to appeal in forma pauperis because any appeal of this decision would be frivolous.

**IV. Order**

For the foregoing reasons, **IT IS ORDERED** that respondent's motion for summary judgment is **GRANTED** and the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability and permission to proceed on appeal in forma pauperis is **DENIED**.

s/John Corbett O'Meara
United States District Judge

Date: February 11, 2014

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, February 11, 2014, using the ECF system and/or ordinary mail.

s/William Barkholz
Case Manager